NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                    :
PATTY L. WEISBROT,                  :
                                    :    Civil Action No. 97-2711(FLW)
              Plaintiff,            :
                                    :    **OPINION**
       v.                           :
                                    :
ALAN SCHWIMMER, D.D.S, and          :
MARK J. BRONSKY, D.M.D., M.S.       :
                                    :
              Defendants.           :
_____ :

**WOLFSON**, **United States District Judge:**

In this dental malpractice action against Defendants, Alan Schwimmer, D.D.S. ("Dr. Schwimmer") and Mark J. Bronsky, D.M.D., M.S. ("Dr. Bronsky") (collectively, "Defendants"), Plaintiff Patty L. Weisbrot ("Plaintiff") alleges that Defendants were negligent in providing medical treatment to her and that their negligence proximately caused a permanent, disabling pain in her jaws. Defendants filed the instant motion, asking the Court to declare that 1) New York law regarding set-off for prior settlements, when determining apportionment of liability, will be applied in this case; 2) Defendants may introduce evidence regarding the liability of a settling third party in the instant action; 3) settling third party is a tortfeasor in the instant action; and 4) Defendants may introduce, during trial, testimony from experts originally retained by Plaintiff.[1] Plaintiff subsequently stipulated that New York law regarding set-off should apply. For the reasons herein

---

[1] Plaintiff also brought up three issues in her brief: 1) Pre-judgement interest; 2) post judgement payments; and 3) vicarious liability among the Defendants. These issues are not relevant to the instant motion filed by Defendants, therefore the Court will not make any determinations with regards to these issues in this Opinion.

stated, Defendants' motion is GRANTED in part and DENIED in part.  Specifically, 1) the Court concurs with the parties that New York law regarding set-off should apply; 2) the question of whether a settling third party is a tortfeasor in the instant action is a question for the jury at trial; and 3) the Court finds that no exceptional circumstances exist that would justify Defendants using non-testifying experts previously retained by Plaintiff.

**I.     BACKGROUND AND PROCEDURAL HISTORY**

The following facts are undisputed unless otherwise stated.  Plaintiff originally suffered her injuries during a bicycle accident on July 16, 1995, on property owned by former co-defendant Chef International, Inc., d/b/a "Jack Baker's Wharfside" and the Wharfside Tropical Patio ("Chef International").  In May 1997, Plaintiff commenced an action to recover damages for personal injuries against Chef International in United States District Court for the District of New Jersey ("New Jersey Action").

Following the accident, Plaintiff was diagnosed with a fractured jaw for which she received treatment from a non-party doctor in New Jersey.  Plaintiff continued to complain of restricted range of motion in the jaws, pain in the jaw joints, and occlusal dysfunction after her treatment with the New Jersey doctor.  As a result, a family friend referred her to Defendant Dr. Schwimmer.  Plaintiff first visited Dr. Schwimmer at his New York office on April 29, 1996.

After initial physical therapy and occlusal adjustments failed to correct Plaintiff's problems, Dr. Schwimmer formulated a treatment plan involving orthognathic surgery and orthodontics; Defendant Dr. Bronsky performed the orthodontic aspect of the plan.  All treatments rendered by Defendants occurred in New York.  Plaintiff does not contend that she was induced to visit Defendants by any of Defendants' advertising or solicitation, nor does the record show that

Defendants advertised or solicited business in the state of New Jersey. Plaintiff continued treatments with Dr. Schwimmer until February 1999 and Dr. Bronksy until August 2001.

On July 17, 2001, Plaintiff commenced an action against Defendants in the Supreme Court of New York, New York County, for injuries allegedly suffered as a result of dental malpractice. On July 25, 2002, Chef International served Defendants with a third-party summons and complaint in the New Jersey Action. Subsequently, Plaintiff amended her complaint in the New Jersey Action to include Defendants as direct parties. Defendants moved to dismiss the third-party action and the Amended Complaint in this Court on the grounds of lack of personal jurisdiction and the existence of an identical action in New York. The Honorable Mary L. Cooper, U.S.D.J., denied the motions.

Thereafter, Defendant sought to dismiss the New York state action. By the order of the Honorable Eileen Bransten, the New York action was voluntarily dismissed without prejudice with leave to renew by motion or stipulation in the event that the New Jersey Action is dismissed not on the merits. On December 10, 2003, Plaintiff informed the Defendants that a settlement had been reached with Chef International for the amount of $350,000. In early 2004, with Chef International no longer in the case, Defendants moved for either dismissal on the grounds of forum non-conveniens or, alternatively, for a transfer back to its original venue in New York state court. The Honorable Stanley R. Chesler, U.S.D.J., denied the motions.

II.   DISCUSSION

    A. **Choice of Law for Set-Off of Prior Settlements**

Defendants assert that New York law should control when determining how the prior settlement between Plaintiff and Chef International may offset liability in the instant case. Plaintiff, in response, agrees. The Court concurs with both parties. The New York statute for settlement set-

3

off provides that in a tort action where two or more tortfeasors are deemed to be liable for plaintiff's injuries, non-settling tortfeasors are entitled to a reduction of the final judgment award. N.Y. GEN. OBLIG. LAW § 15-108(a) (McKinney 2001). The amount reduced is either the settling tortfeasor's equitable share of the damages, or the actual amount of the settlement, whichever is *greater*. Id. New Jersey law has similar provisions for set-off, but the amount reduced is limited to the settling tortfeasor's equitable share, even if the settlement amount is greater. Kiss v. Jacob, 138 N.J. 278, 283-84 (1994).

In a diversity action, a district court must apply the choice of law rules of the forum state to determine what law will govern the substantive issues of a case. Warriner v. Stanton, 475 F.3d 497, 499-500 (3d Cir. 2007) (citing Klaxon Co. V. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)). Under New Jersey law, a flexible "governmental-interest" test is used to decide a choice-of-law question. Fu v. Fu, 160 N.J. 108, 118 (1999). According to the New Jersey choice-of-law test, an actual conflict must exist between the laws of the opposing jurisdictions before the test is applied, and the choice-of-law inquiry is conducted on an issue-by-issue basis. Id. Five factors guide New Jersey courts in applying the governmental interest test: 1) the interests of interstate comity; 2) the interests of the parties; 3) the interests underlying the field of tort law; 4) the interests of judicial administration; and 5) the competing interests of the states. Warriner, 475 F.3d at 500 (citing Fu, 160 N.J. at 122). Of these, the fifth factor is the most significant in a tort action. Beegal v. Park West Gallery, 925 A.2d 684, 698 (N.J. App. Div. 2007).

In determining which state has the greatest interest in regulating the tort in question, four factors must be taken into account: 1) the place where the injury occurred; 2) the place where the conduct causing the injury occurred; 3) the domicile, residence, nationality, place of incorporation,

and place of business of the parties; and 4) the place where the relationship, if any, between the parties is centered. Lebegern v. Forman, 471 F.3d 424, 428-29 (3d Cir. 2006). In personal injury cases, the place of injury is important, and when both the conduct and the injury occur in the same place, that jurisdiction's law generally will apply except in those rare instances where another jurisdiction has a demonstrably dominant interest and no policy of the situs state is frustrated by application of the sister state's policy. Id. at 429.

In the instant action, it is clear that there is a distinction between the laws of New York and New Jersey, namely, Defendants may be entitled, depending on the outcome of the trial, to a greater reduction in liability under New York law than under New Jersey law due to the amount of the set-off of Plaintiff's settlement with Chef International. Therefore, the Court shall apply New Jersey's "governmental- interest" test to determine which law predominates. Plaintiff's alleged injuries occurred in New York, the alleged malpractice that caused the injuries occurred in New York, and the doctor-patient relationship between Defendants and Plaintiff centered in New York. Furthermore, Defendants do not conduct any business or advertise in New Jersey; in fact, Plaintiff initiated contacts with Defendants on her own volition at Defendants' New York offices. New Jersey, therefore, does not have any added interest in resolving the tort in question beyond that of the welfare of its citizens, an interest shared by New York. In addition, there are no exceptional policy reasons expressed by New Jersey that would warrant the application of New Jersey law over New York law. The Court finds that Plaintiff will also not be prejudiced because she can be justly compensated under New York law; should Plaintiff prove her case, she can recover the full amount of her damages under New York law. Therefore, the Court concurs with the parties and finds that New York law should be applied to the settlement set-off issue.

**B. Determination of Chef International as a Tortfeasor**

Defendants also petition the Court to rule that Chef International is deemed a tortfeasor in the instant action, and to permit them to introduce evidence to show that Chef International is jointly and severally liable as a tortfeasor. On the other hand, Plaintiff argues that Defendants are successive tortfeasors, and the instant action only deals with damages caused by Defendants. As such, Chef International has no involvement in the instant action, and no evidence regarding its involvement should be allowed during trial. The Court finds that such determinations should be properly reserved for the trier of fact. Thus, the Court will allow evidence to be presented to the jury to determine the extent of Chef International's liability, if any, in the instant action.

Under both New Jersey and New York law, when multiple tortfeasors neither act in concert nor contribute concurrently to the same wrong, they are not joint tortfeasors; rather, their wrongs are independent and successive. Ravo v. Rogatnick, 520 N.Y.2d 305, 310 (1987); see also Reichert v. Vegholm, 366 N.J.Super. 209, 213-14 (App. Div. 2004).[2] The burden is on the plaintiff to show, in an action against successive tortfeasors, that the injuries alleged are separate and distinct from injuries suffered as the result of previous tortious conduct. Reilly v. Fulmer, 780 N.Y.S.2d 830, 831 (App. Div. 2004); Reichert, 366 N.J.Super at 214. However, when injuries suffered by plaintiff cannot be separated by any reasonable or practicable division or allocation among multiple tortfeasors, even tortfeasors who neither act in concert nor concurrently may nevertheless be considered jointly and severally liable. Ravo, 520 N.Y.2d at 310; Dep't of Envtl. Prot. v. Ventron Corp., 182 N.J.Super. 210, 222 (App. Div. 1981). It is for the jury to determine whether the injuries

---

[2]No choice of law determination is necessary for this issue, because no conflict exists between New York and New Jersey law.

6

are separate and distinct, and if they are not, how much, if any, liability should be assigned to the prior tortfeasor. See Ravo, 520 N.Y.2d at 312; Reichert, 366 N.J.Super at 225; see also MacDowall v. Koehring Baic Constr. Equip., 49 N.Y.2d 824, 826 ("[T]he issue of contributory negligence . . . is a jury question in all but the clearest of cases."); N.J.S.A. 2A:15-5.2.

In the instant case, it is undisputed that Defendants and Chef International did not act in concert nor concurrently cause injuries to Plaintiff. Contrary to Plaintiff's position, however, there is an issue of fact at this stage of the proceedings as to whether the injuries suffered by Plaintiff can be reasonably divided among Defendants and Chef International.[3] Plaintiff offers no evidence in its brief to show that injuries caused by Defendants are separate and distinct from those caused by Chef

---

[3] Plaintiff contends that Hill v. St. Care's Hospital, 67 N.Y.2d 72 (1986) requires the Court to hold a separate hearing after trial to determine if any portion of the settlement with Chef International should offset the final judgment award in the instant action, and that such hearing should be a bench trial. Until such time, Plaintiff asserts that evidence of Chef International's involvement in causing Plaintiff's injuries should be barred from the instant action. The Court finds these assertions misplaced. In Hill, plaintiff sued defendants for medical malpractice stemming from injuries he suffered during an elevator accident. Id. at 75-76. Before trial, plaintiff settled with the elevator company in a separate action. Id. at 77. During trial, the trial court denied any offset of the prior settlement, and the jury eventually returned a verdict against defendants. Id. at 77-78. The court in Hill held that the trial court erred in denying any offset of the prior settlement, and remanded the case to the trial court for a hearing on whether any portion of the settlement should offset the final judgment award. Id. at 85. This case, however, is distinguishable from Hill. No trial has been held for the instant action, nor has a final judgment been awarded. The court in Hill ordered a new hearing to be held only because a jury had already determined liability of the defendants, and it would be unjust to the plaintiff to order a new trial when the question of liability was not in dispute. Furthermore, the court in Hill never asserted that the subsequent hearing must be decided by a judge, as evidenced by its repeated use of phrases such as "the trier of fact" and "the fact finder," suggesting that a jury would be the proper decision maker. Id. at 86. Since the instant action has not proceeded to trial, all of these issues may be presented to the jury for proper determination without the need of a second hearing after the trial. In addition, the question of whether Defendants are in fact successive tortfeasors has not been decided, a question the court in Hill did not have to confront.

International.[4]  On the other hand, Defendants offer little evidence to show that the injuries are not entirely divisible. (Def.'s Br. 17.)  In light of the paucity of proofs at this stage, there are plainly issues of fact which the Court reserves for the trier of fact to determine during trial.  Accordingly, since Plaintiff has the burden of proof to establish that the injuries alleged are separate and distinct, and Defendants have the right to offer evidence to rebut such a claim, the Court will allow Defendants to introduce relevant evidence with regards to Chef International's liability, subject to the normal rules of evidence.[5]

### C. The Use of Plaintiff's Experts by Defendants

Defendants petition the Court to permit Defendants to call as witnesses at trial, experts previously retained by Plaintiff, in particular Dr. Martin Gizzi, in connection with her previous claims against Chef International.  As a result of the settlement with Chef International, Plaintiff does not intend to call such experts as witnesses during the trial against the Defendants.  Defendants argue that Plaintiff's previous position that Chef International was a tortfeasor responsible for some of the ills Plaintiff now complains Defendants are responsible for, militates in favor of Defendants presenting these expert witnesses.  Plaintiff argues that allowing Defendants to use her own experts would unjustly prejudice Plaintiff, and such use should only be allowed under exceptional

---

[4]The Court takes notice of the fact that Plaintiff's expert, Dr. Martin Gizzi, may have contradicted Plaintiff's current position by opining that Chef International and Defendants were joint tortfeasors.  Although Plaintiff does not intend to call Dr. Gizzi as a witness, for purposes of this motion, solely, the Court notes that Plaintiff's prior position further demonstrates that there are issues of fact as to the status of Defendants and Chef International.  The Court will discuss Defendants' request to call Plaintiff's non-testifying experts during trial, including Dr. Gizzi, later in this Opinion.

[5]For example, both parties have stipulated that the issue of settlement between Plaintiff and Chef International should not be introduced at trial, and the Court concurs.

circumstances. The Court agrees with Plaintiff and denies Defendant's motion, on the ground that no exceptional circumstances exist that would convince the Court to allow Defendants to use Plaintiff's experts.

As the parties stated in their briefs, a search of Third Circuit case law reveals that there are no cases directly on point. However, courts in other jurisdictions have confronted this issue. In fact, there appears to be a growing body of case law that relies upon the standard set forth in Rule 26(b)(4)(B) of the Federal Rules of Civil Procedure to make this determination. See Rubel v. Eli Lilly & Co., 160 F.R.D. 458, 460 (S.D.N.Y. 1995); FMC Corp. v. Vendo Co., 196 F.Supp.2d 1023, 1042-46 (E.D. Cal. 2002); House v. Combined Ins. Co. Of Am., 168 F.R.D. 236, 245 (N.D. Iowa 1996); Durflinger v. Artiles, 727 F.2d 888, 891 (10th Cir. 1984). The Court finds this standard appropriate in the instant matter.[6] This standard would appear to appropriately balance the probative value of such testimony as compared with the prejudicial impact.

Federal Rules of Civil Procedure, Rule 26(b)(4)(B) states:

> A party may, through interrogatories or by deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, only as provided in Rule 35(b) or *upon a showing of exceptional circumstances* under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.

Fed. R. Civ. P. 26(b)(4)(B) (emphasis added). The court in House reasoned that the use of Rule 26 is appropriate in this context because "[p]arties should be encouraged to consult experts to formulate

---

[6]Defendant's contention that New York law controls on this issue is misplaced. This issue is essentially a procedural issue, not a substantive issue. This is amply demonstrated by the fact that every federal court that considered this issue has chosen Rule 26 of FRCP as the starting point for analysis, expressing the implicit understanding that the issue is in fact procedural and, therefore, should be governed by FRCP. See also Rubel, 160 F.R.D. at 462 n.4 ("This issue, however, is governed by federal rather [than] state law.").

9

their own cases, to discard those experts for any reason, and to place them beyond the reach of an opposing party, if they have never indicated an intention to use the expert at trial." 168 F.R.D. at 245. Furthermore, the court in Rubel held that while "all probative information in service of the overall search for truth weighs in favor of compelled testimony and, indeed, discovery even from consultative experts," nevertheless four factors counter-balance such search for truth: 1) Parties should be able to obtain expert advice in order to properly evaluate and present their positions without fear that every consultation may yield useful information to be used by the opposing parties; 2) FRCP 26 reflects a view that it would be unfair to allow a party to benefit from the effort and expense incurred by the opposing party in preparing its case; 3) allowing opposing parties to compel testimony of a party's expert is unfair to the expert and may diminish the willingness of experts to serve as consultants; and 4) permitting one party to call an expert previously retained or consulted by the other side entails a risk of very substantial prejudice stemming from the fact of the prior retention, quite apart from the substance of the testimony. 160 F.R.D. at 460; see also House, 168 F.R.D. at 241.

In the instant case, the Court cannot find any exceptional circumstances under which Defendants should be allowed to use Plaintiff's experts at trial. None of Plaintiff's experts appear to have any specialized skill set that Defendants cannot obtain from another expert. Since being named as parties in the New York action in 2001, Defendants have had more than ample time to obtain any and all experts they require for trial. Furthermore, the particular expert Defendants express interest in calling at trial, Dr. Gizzi, has never been identified by Plaintiff as a possible witness during trial, nor has Plaintiff given permission, either expressly or implicitly, to Defendants to call Dr. Gizzi at trial. Furthermore, for the reasons stated above, the Court would not be placing

an undue burden on Defendants by disallowing them from using Plaintiff's experts.[7]

Furthermore, Defendants expressly contend that the use of Dr. Gizzi's testimony is necessary to establish Plaintiff's "disingenuous" intent and offer it as "proof" that Chef International is in fact a tortfeasor in the instant case. However, the Court finds such testimony would be extremely prejudicial to Plaintiff and not particularly probative. Essentially, the issues in the instant matter are whether Defendants negligently caused bodily injuries to Plaintiff and whether Chef International is partially liable for those injuries. Defendants have already retained, or should have already retained, other experts who are prepared to give the same medical testimony that Defendants are seeking from Dr. Gizzi. Thus, Defendants do not need this testimony to prove their claims. Instead, it appears that Defendants' desire to use Dr. Gizzi as an expert arises from nothing more than the fact that Dr. Gizzi was originally retained by Plaintiff to testify that Plaintiff's injuries, especially her RSD, was perhaps due to the underlying accident caused by Chef International, and such retention may demonstrate Plaintiff's own inconsistencies with respect to Chef International's liability in the instant malpractice suit. Indeed, this is precisely the situation the court in Rubel contemplated when it stated that such practice "entails a risk of very substantial prejudice stemming from the fact of the prior retention, quite apart from the substance of the testimony." 160 F.R.D. at 460. Accordingly, the Court finds that no exceptional circumstances exist to permit Defendants to use Plaintiff's

---

[7]Defendant's reliance on Peterson v. Willie, 81 F.3d 1033 (11th Cir. 1996), as standing for the proposition that the court in Peterson "expressly approved this practice," (Def.'s Br. 18), is incorrect. In Peterson, the court dealt with the question whether an expert who was originally identified as a witness at trial by one party, but subsequently withdrawn by the same party, should be allowed to testify for the opposing party. Id. at 1036-37. The court held that the lower court "erred in permitting the appellees' counsel to elicit the fact that [plaintiff's expert] had been previously retained by an attorney representing [the plaintiff]." Id. at 1038. The court, however, deemed such an error harmless. Id. It appears that Peterson did *not* favor the use of one party's experts by the opposing party, in total opposite to what Defendants seem to assert.

experts during trial.

### III. CONCLUSION

For the reasons set forth above, Defendants' Motion *in Limine* is GRANTED in part and DENIED in part. Specifically, the Court holds that 1) New York law will apply to the issue of settlement set-off; 2) the issue of whether Chef International is a tortfeasor in the instant action will be reserved for determination by the jury, and both parties may offer evidence on that issue; and 3) no exceptional circumstances exist that would justify Defendants using experts previously retained by Plaintiff and that the prejudice to Plaintiff would be great.

An appropriate Order shall follow.

/s/   Freda L. Wolfson
The Honorable Freda L. Wolfson
United States District Judge

Date: September 6, 2007